UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YANELLE STRONG-FISCHER

  v.                                                                              1:07-CV-265 RWR

MARY PETERS, SECRETARY
    DEPARTMENT OF TRANSPORTATION

MS. STRONG-FISCHER'S AMENDED COMPLAINT

1. Ms. Strong-Fischer ("Fischer") is a former Environmental Manager, pay band J (retained pay K), within the Department of Transportation, Federal Aviation Administration ("FAA"). Ms. Fischer was a 16-year employee of the FAA with outstanding performance ratings. Ms. Fischer is an African-American female. The FAA is a division of the Department of Transportation.

2. Defendant Mary Peters is Secretary of Transportation ("DOT"), a Department of the United States government served by process at 400 7th Street, S.W., Washington, D.C. 20590. The Secretary of Transportation may also be served via the Department of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20350.

3. Jurisdiction is proper under 42 U.S.C. 1981 (violation of civil rights).

FACTUAL BACKGROUND

4.     Ms. Fischer has a background of exceptional performance with the FAA. She has a background in electronic engineering.

5.     Ms. Fischer had worked in the Washington, D.C. area before moving to the Los Angeles Regional Office to care for her father. After he passed, Ms. Fischer returned to the Washington Area and obtained a

        position as the Assistant Automation Supervisor, at Chesapeake System Management Office (SMO).

6. The workforce in each of the sections at Chesapeake SMO was at least 95% Caucasian male.

7. While serving in that position, the Chesapeake SMO failed to give Ms. Fischer assignments appropriate for that position and given much less than the normal supervisor authority for an assistant supervisor.

8. As assistant manager, Ms. Fischer became a member of the "management team" at Chesapeake SMO.

9. Upon return to the Chesapeake SMO from detail, Ms. Fischer found that the management team, in her absence, and with the approval of manager Cordon "Les" James, had proposed for approval replacing the Environmental Supervisor with a coordinator, a less-qualified Caucasian male.

10. Ms. Fischer opposed this appointment and became Environmental Supervisor in July or early August 2004.

11. Ms. Fischer passed a probationary period as Environmental Supervisor and received formal recognition for outstanding performance.

12. The Environmental Supervisor position had substantially more responsibility than the Automation Supervisor position. Terms and conditions of employment, including working conditions, and responsibility, were also substantially better and more varied.

13. Ms. Fischer received a positive performance appraisal for her time as Environmental Supervisor.

14. In November 2004, Ms. Fischer applied for and on 11/22/04 received Mr. James' approval to go on 12 weeks unpaid FMLA leave to seek to adopt children.

15. While on leave, Ms. Fischer received calls while on leave, "have you adopted, will you be coming back?" She raised EEO issues in an e-mail.

16. Ms. Fischer was not "backfilled" while on leave.

17. In February 2005, Mr. James selected Michael Crompton, who did not have supervisory experience, for Communications Division Supervisor, over several candidates with substantial supervisory experience, including Ron Harper, an African-American.

18. Mr. Crompton began work in this position, effective February 20, 2005.

19. On 3-3-05, Ms. Fischer received a call from supervisor, Michelle Polar, stating that the management team was considering replacing her as Environmental Supervisor with Michael Crompton.

20. Ms. Fischer stated that she would oppose this and believed it to be inequitable and discriminatory.

21. On 3-4-05, Ms. Fischer made an initial contact with the FAA EEO Office.

22. On 3-7-05, while Ms. Fischer was on FMLA leave, the management team met and voted she should be replaced as Environmental Supervisor by Michael Crompton and transferred to Automation.

23. Ms. Fischer received a phone call from upper level manager Mr. Enriquez, who stated that he expected her to report to Automation and "do my job."

24. On Friday, March 18, 2005 at 1 p.m., Ms. Fischer received a phone call and then an email from Mr. James stating that she was to report as Automation Supervisor Monday morning.

25. After sending a resignation letter on Monday, March 21, 2005, Ms. Fischer immediately changed her mind and called Mr. James at 11 a.m. Tuesday, 3-22-05.  She stated she rescinded her letter and that she wanted to work despite the difficulties.

26. Mr. James said he would think about it and then called her back later the same day, and invited her to his offices the next morning, 3-23-05 "to discuss expectations."

27. On 3-23-05, Ms. Fischer met with Mr. James at his FAA offices.  Ms. Fischer stated at least twice that she rescinded her resignation and that she wished to continue work at FAA.  In response to Mr. James' questions, she discussed and opposed several events in her employment at FAA Chesapeake SMO  that she believed were discriminatory, and stated were discriminatory and a hostile work environment.  Ms.

        Fischer also stated that she had not completed adoption and still wished to adopt.

28. After the meeting, Mr. James considered Ms. Fischer's request to continue work. Mr. James wrote a memorandum on 3-24-05 summarizing conclusions, based on the meeting, leading to his instructions to "continue to process Ms. Fischer's resignation letter."

29. Ms. Fischer wrote a written request to rescind her resignation but did not hear back from Mr. James.

30. Ms. Fischer contacted DOT EEO, which contact was forwarded to Mr. James on 3-29-05

31. On 3/31/05, upper level manager Ms. Hudson requested that Ms. Fischer should come back if possible.

32. This memo and the EEO intake were then forwarded to Mr. James.

33. Mr. James then sent a letter to Ms. Fischer, dated April 4, 2005 stating that the resignation letter "stands" and that he was not going to rescind her resignation letter. This effectively terminated Ms. Fischer's employment. Ms. Fisher has suffered emotional and pecuniary damages.

### Violation of 42 U.S.C. 1981

34. Mr. Cordon James and the FAA discriminated and/or committed reprisal discrimination or a hostile work environment against Ms. Fischer by transferring her from her Environmental Supervisor position, without her consent or participation, in favor of a less-

qualified Caucasian male, Michael Crompton, while she was on approved leave.

35. Ms. Fischer opposed Mr. Cordon James and the FAA's involuntary transfer of her from Environmental Supervisor, which she believed to be discriminatory and/or reprisal discrimination and part of a hostile work environment.  She also raised and opposed several other significant allegations of discrimination and hostile work environment at the FAA at a meeting at Mr. James' office on 3-23-05.  She had earlier raised and opposed actions she believed to be discriminatory and/or hostile work environment.  Her raising and/or opposing issues of discrimination, reprisal or hostile work environment, under 42 U.S.C. 1981 was a motivating factor in Mr. James' refusal to process her recission of her resignation, and/or in continuing to process her rescinded resignation, which effectively terminated her employment, and in notifying Ms. Fischer that her "her resignation stands," all constituting discrimination and reprisal discrimination and/or hostile work environment.

36. Ms. Fischer, not hearing from Mr. James, then continued an EEO action at DOT regarding Mr. James' actions, and this EEO activity, together with her previous contact(s) with the EEO department at FAA, became another motivating factor in Mr. James' refusing to process her recission of her resignation, in continuing to allow her rescinded resignation to be processed  and notifying Ms. Fischer that "her

resignation stands, " terminating her employment against her wishes, constituting reprisal discrimination and discrimination and/or hostile work environment.

37. This is race, gender, hostile work environment and reprisal discrimination under 42 U.S.C. 1981.

38. Mr. James' refusal to rescind Ms. Fischer's resignation, his continuing to allow the processing of her resignation and the termination of Ms. Fischer was also motivated in part by gender discrimination because of the assumption that she would be incapable of continuing to serve as a supervisor, while pursuing adoption.

39. The FAA and Mr. James discriminated, and created a hostile, discriminatory and harassing work environment for Ms. Fischer in her job as assistant supervisor, supervisor and subsequently by holding management meetings concerning her employment, while she was on leave, and approving her transfer to another position without her consent, all in violation of 42 U.S.C. 1981.

40. Section 1981 forbids all discrimination or impairment of the rights to make, perform, modify and terminate employment contracts as well as in the enjoyment of the benefits, privileges, terms and conditions of employment.

41. Here, Mr. James' and the FAA's actions as outlined in the paragraphs above, constituted violations of 42 U.S.C. 1981.

<u>Request for Relief</u>

Pursuant to 42 U.S.C. 1981, Ms. Strong-Fischer requests reinstatement, compensatory and punitive damages, back pay, attorney fees and costs.

WHEREFORE, PREMISES CONSIDERED, Ms. Strong-Fischer respectfully requests the above relief and all such other relief as to which this Honorable Court may rule she is entitled. Ms. Strong-Fischer requests a trial by jury.

        Respectfully submitted,

        /s/
        Brian C. Plitt, Attorney at Law
        DC Bar No. 408746
        1519 Constitution Ave., NE, Ste 201
        Washington, D.C.  20002
        (202) 546-5493
        ATTORNEY FOR MS. STRONG-FISCHER